**MORAN v. UNITED STATES, and**
**four other cases.**
**Civ. A. Nos. 2147, 2436, 2457, 2460, 2842.**

United States District Court
D. Connecticut.
April 10, 1951.

276

Francis F. McGuire, New London, Conn., for plaintiff Moran.

H. S. MacDonald, New Haven, Conn., for plaintiff Bessette.

Wilfred E. Hoffman, Syracuse, N. Y., for plaintiff Mussell.

William L. Beers, New Haven, Conn., for plaintiff Parker.

Jeremiah D. Shea, New Haven, Conn., for plaintiff Bindloss.

Adrian W. Maher, U. S. Atty., New Haven, Conn., for the United States.

HINCKS, Chief Judge.

These five actions, one for personal injury, one for property damage and three for wrongful death, arise out of the sinking of the fishing vessel Captain Nathaniel B. Palmer on April 6, 1945, as a result of an explosion which occurred as her fishing nets were being hauled alongside. The explosion was allegedly the detonation of an aerial bomb which became entangled in the vessel's nets in navigable waters about ten miles south-southeast of South East Light, Block Island. On information and belief plaintiffs allege that the bomb was deposited in the water by military aircraft during previous experimental and trial bombing runs in the area.

The suits were brought against the United States under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b), and are based on allegations of negligence and nuisance. The actions were consolidated for purposes of trial, and the government now moves to dismiss on the ground that the Federal Tort Claims Act does not extend to maritime torts by government employees, and on the further ground that, even if the Act does apply, the three actions for wrongful death are barred because they were not brought within the two-year limitation of the Death on the High Seas Act, 46 U.S.C.A. § 761. Each of these contentions raises a question of first impression.

█ The government insists that the legislative history of the Federal Tort Claims Act shows that it was not meant to apply to any "maritime" or "admiralty" torts and on brief it cites excerpts from the legislative history which include vague language to that general effect. But Sections 401 to 424 of the Legislative Reorganization Act of 1946, 60 Stat. 812, which was, and will be hereinafter referred to as, the "Original", Federal Tort Claims, Act, Id., pg. 842, makes it abundant-

ly plain that the only maritime torts of the United States excepted, Sec. 421 of the Original Act, 60 Stat. 845, 28 U.S.C.A. § 2680, were those for which a remedy was provided by the Suits in Admiralty Act, 46 U.S.C.A. §§ 741–752, and by the Public Vessels Act, 46 U.S.C.A. §§ 781–790: the statutory language makes no exception for other maritime torts. That other maritime torts by employes (as distinguished from vessels) of the United States were intended to be included in the Act is confirmed by the repeal provisions of the Act. Sec. 424 (a) of the Original Act, 60 Stat. 846. To understand the effect of these repeal provisions, it must be remembered that prior to the enactment of the Federal Tort Claims Act, a legislative pattern had developed whereby the heads of many specified executive departments, each by separate Act, were authorized to determine claims not exceeding a moderate specified amount, such as $1,000 or $500, caused by the negligence of a government employee and pay the same from an existing departmental appropriation or certify the amount allowed thereon to Congress for payment. 42 Stat. 1066, 31 U.S.C.A. § 215, was typical of such Acts. But obviously Acts of this nature were superseded by Sec. 403 of the Original (Tort Claims) Act, see 28 U.S.C.A. § 2672 which authorized the department or "federal agency" head not merely to determine such claims and report them for payment but even to "settle" and to pay the same out of his departmental appropriations. And so, naturally, 31 U.S.C.A. § 215, and other similar acts, were expressly repealed by Sec. 424(a) of the Original Act, and by Sec. 424(b) the scope of such repeals was expressly limited to claims within the scope of Sec. 403(a) of the Original Act. Against this background it is highly significant that one of the Acts expressly subjected to limited repeal by Sec. 424(a) of the Original Act was 40 Stat. 705, 34 U.S.C.A. § 600. Section 599 of Title 34 U.S.C.A. under the caption of "Claims for damages occasioned by vessels" gave the Secretary of the Navy power to settle claims not exceeding $3,000 for which naval vessels were found to be responsible. It will thus be seen that the failure of Con-

gress in the Original Act to repeal 34 U.S.C.A. § 599 was wholly consistent with the exception contained in Sec. 421(d) of the Original Act, 28 U.S.C.A. § 2680(d), of liability for torts by public vessels. But 34 U.S.C.A. § 600, under the caption "Claims for damages not occasioned by vessels" authorized the Secretary of the Navy to determine and pay "all claims for damages (other than such as are occasioned by vessels of the Navy), to and loss of privately owned property, * * * where the amount of the claim does not exceed $500, for which damage or loss men in the naval service or Marine Corps are found to be responsible". Thus by its express language 34 U.S.C.A. § 600 included claims for damages *other than such as are occasioned by vessels of the Navy* for which naval personnel were responsible: plainly it covered all torts by navy personnel, whether occurring on sea or on land, as distinguished from torts by vessels. The repeal of this act by Sec. 424(a) of the Original Act can only be explained by a Congressional belief and intent that the claims covered by 34 U.S.C.A. § 600 were included in Sec. 403 of the Original Act, 28 U.S.C.A. § 2672.

The broad language of the Act precludes the narrow construction which the government now advances. When the Act specified that the liability of the government shall be determined "in accordance with the law of the place where the act or omission occurred" clear intent was expressed to waive immunity irrespective of the place of the tort. It is significant that the applicable law was not stated to be the law of the State or territory: instead the language used was broad enough to include the maritime law which, of course, is the law of the place applicable to maritime torts. The express exception of "claim[s] arising in a foreign country", stated in 28 U.S.C.A. § 2680(k) is without opposing effect. Indeed, this exception lends strength to the plaintiffs' position: it showed that Congress realized that if the contemplated waiver of immunity were wholly without geographical restriction it would include waiver of immunity from liability for torts committed outside the territorial boundaries

of the nation. Consequently, that the exception of torts occurring in foreign countries was not extended to employee torts occurring on the high seas is significant for its bearing on the problem here, and is not in the least inconsistent with anything in the opinion in United States v. Spelar, 338 U.S. 217, 70 S.Ct. 10, 11, 94 L.Ed. 3. It was said there that the "coverage of the Federal Tort Claims Act was geared to the sovereignty of the United States" and that the coverage of the Act was identified "with the scope of United States sovereignty." It is fundamental, of course, that the sovereignty of the United States extends to all things maritime. U.S.C.A.Const. Art. 3, Sec. 2.

■ The fact that by 28 U.S.C.A. § 1346(b) the district court is given jurisdiction of "civil actions" cannot be taken to mean that the jurisdiction thus conferred is exclusive of the subject-matter of proceedings in admiralty. It is more reasonable to conclude that the term was used in a generic sense to cover all private actions for damages as distinguished from criminal proceedings. Indeed, it should be noted that the Original Act did not speak of "civil actions": it provided for the settlement of claims "for money only * * * on account of damage * * * caused by the negligent" act of a government employee. Sec. 403(a). And it gave jurisdiction to the district courts of "any claim against the United States, for money only * * * on account of damage," etc. Certainly *claims for money damages* was language broad enough to include claims for maritime torts. Merely because in the process of codification in 1948 the language of the statute was changed so that now the jurisdictional grant is "of civil actions on claims" for money damages, 28 U.S.C.A. § 1346(b), one may not sensibly assume that Congress, having by the Original Act in 1946 given enforceable claims to victims of government negligence on the seas, by the use of the words "civil action" in the Code of 1948 intended to take away the rights so recently created.

True, proceedings in admiralty are expressly excepted from the operation of the Federal Rules of Civil Procedure. Rule 81, 28 U.S.C.A. This explicit exception presumably was made because otherwise it might be thought that an invocation of the maritime law, no less than an invocation of the common or statutory law, was a suit "of a civil nature" within the meaning of Rule 1, to be prosecuted by a single form of action designated as a "civil action" by Rule 2. However, merely because a proceeding in admiralty is not the "civil action" with which the Rules of Civil Procedure are concerned, it does not follow that Congress, and especially when dealing with matters of substance as distinguished from procedure, uses the phrase "civil action" as exclusive of proceedings for the application of the maritime law. Indeed, if the words were interpreted to exclude all claims in admiralty there would have been no need at all for the exception of 28 U.S. C.A. § 2680(d), discussed above.

Jurisdiction under the Death on the High Seas Act is conferred upon "the district courts of the United States, in admiralty", 46 U.S.C.A. § 761, and under the Federal Tort Claims Act jurisdiction is conferred upon "the district courts". However, the mere fact that the remedy provided under the Tort Act was at law does not prove that the rights created were not of maritime nature. By the Jones Act, 46 U.S.C.A. § 688, Congress had created new maritime rights. Yet the remedy provided for these new rights was at law,—not in admiralty. Although by the Death Act and the Public Vessels Act it was intended that the right created should be enforced in Admiralty, perhaps, one may surmise, to preserve the owner's right to limit his liability to the value of the vessel, it was clearly within the power of Congress to provide, as it did in Sec. 411 of the Original Act, that in the enforcement of the government's liability for the tort of an employee, where no vessel was involved and hence no occasion to limit liability to the value of the vessel, the procedure to be used should be the Federal Rules of Civil Procedure which had been so shaped as to be peculiarly appropriate for the trial of torts involving the negligence of employees.

The view which I take of the scope of the Act is required to effectuate both its

substantive and its procedural objectives. Thus the liberal objective of eliminating injustices resulting from damages wrought by government employees is not one which suggests a differentiation between torts on sea and torts on land. And the procedural objective of relieving an overburdened Congress of the time-consuming chore of considering and passing upon reports by departmental heads relating to the settlement of claims, would be equally frustrated by pressures for action whether the claims involved torts on sea or torts on land. Cf. State of Maryland to Use of Burkhardt v. United States, 4 Cir., 165 F. 2d 869, 1 A.L.R.2d 213.

There are no cases directly concerned with this problem, but Ryan Stevedoring Co. v. United States, 2 Cir., 175 F.2d 490, contains a pertinent dictum. There the court was referring to the limited scope of the Suits in Admiralty and Public Vessels Acts and stated, 175 F.2d at page 493, "There is no suggestion in either act that governmental immunity is to be waived in essentially every case which can be brought in the admiralty * * *. In short there is nothing comparable to the recent Federal Tort Claims Act, passage of which makes unnecessary distortion of these acts so clearly designed to apply to the extensive shipping operations of the United States which began with the First World War." In other words, the suggestion was, there is no longer need to strain the two earlier acts to cover every maritime tort, for the Federal Tort Claims Act provides the necessary waiver of immunity from liability for all maritime torts to which the earlier acts do not apply.

I hold, therefore, that these actions are all within the scope of the Federal Tort Claims Act.

The government's final contention is that the three actions for wrongful death are barred by the running of the two-year period of limitation in the Death on the High Seas Act. This contention is based upon the premise that the limitation of that Act is a condition of the plaintiffs' substantive right and not merely a limitation upon the remedy.

It is, indeed, authoritatively established in this circuit that the limitation which Congress imposed when it created the right of action afforded by the Death on the High Seas Act was a condition of the right itself,—not merely a limitation upon the remedy. In re Agwi Nav. Co., 2 Cir., 89 F.2d 11. See also Botkiewicz v. Seas Shipping Co. But even if, but for the Tort Claims Act, the right of action for wrongful death created by the Death on the High Seas Act would have been extinguished by lapse of time, the Tort Claims Act was effective to extend the reach of the Act to the United States and to fix the time within which action thereunder against the United States might be brought,—just as in Young v. U. S., D.C.Cir., 184 F.2d 587, it was held that the Lord Campbell's Act of the District of Columbia, which also contained a limitation upon the right created, was in effect amended by the Tort Claims Act in its application to actions against the United States. Since here, as in the Young case, the statute creating the right was of federal origin and hence within the reach of Congress to amend, it is not necessary to invoke the holding of Maryland, to use of Burkhardt v. United States, 4 Cir., 165 F.2d 869, 1 A.L.R.2d 213, which held that the Federal Tort Claims Act was effective to hold the United States to a liability for wrongful death even though the liability of a private person, in the position in which the United States then found itself, would have sooner terminated by reason of a condition upon the right created by the statute of the state in which the death occurred.

The applicable limitation here is that of the Federal Tort Claims Act, as amended, 63 Stat. 62, 28 U.S.C.A. § 2401(b). Under that Act, the actions all were seasonably brought.

It is ordered that the government's motion to dismiss as directed against all of the pending actions be in all respects denied.